RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 6/23/11
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| PERCY GARRETT | DOCKET NO. 11-CV-338; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| WINN CORRECTIONAL CENTER | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the court is the civil rights complaint (42 U.S.C. § 1983) of Plaintiff Percy Garrett, filed pro se and *in forma pauperis*. Plaintiff is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He names as defendant Winn Correctional Center.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.

### *Plaintiff's Allegations*

In Plaintiff's original complaint, he states that he was smoking in his dorm, which is a rule violation, and he was apparently written up. As a result, Plaintiff had to wear a red or orange vest. Because he had the vest on, he was not allowed to attend religious services. [Doc. #1]

In an amended complaint, Plaintiff also alleges that he had a permanent pass to go to the infirmary for "nitro tabs" as needed. One day, when Plaintiff said he needed to go to get his medication, "Coach Louis" would not allow him to go to the infirmary. However, he then asked Ms. Heyse, and she told Plaintiff that he could, in

fact, get his medication. [Doc. #3]

In a third amended complaint, Plaintiff alleges that when the prison is on lock-down, the water is "cut off" for the inmates, but not for the guards. [Doc. #7]

In his fourth amended complaint, Plaintiff states that he "came up to the bars" and asked Officer Powell if he could go to "medical" to get his nitroglycerin pills because he had run out. The officer refused despite Plaintiff having a pass to go to the infirmary. [Doc. #8]

## Law and Analysis

"Notwithstanding any filing fee, or any portion thereof, that may have been paid," the district court must dismiss an in forma pauperis complaint if, at any time, it determines that the action is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). Further, 28 U.S.C. §1915A requires that the district court screen complaints filed by a prisoner seeking redress from a government officer or employee and dismiss claims that the court determines to be frivolous or malicious, or that fail to state a claim on which relief may be granted. § 1915A(a),(b)(1).

### 1. Winn as Defendant

Plaintiff's named defendant is the Winn Correctional Center. Federal Rule of Civil Procedure 17(b) provides the "capacity to sue or be sued shall be determined by the law of the state in which the

district court is held." Thus, Louisiana law governs whether Winn has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "...an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. Art. 24. A review of the Louisiana Secretary of State's corporation database suggests that Winn is not a corporation, and, as such, not a juridical person. Plaintiff has failed to allege or establish otherwise. Because Winn Correctional is the only named defendant, Plaintiff's entire complaint is subject to dismissal.

## 2. Religious Freedom claim

Even if Plaintiff had named a proper defendant, his claim regarding missing church should still be dismissed. Plaintiff states that he was made to wear a colored vest as punishment for smoking in the dorm, which he admits is a rule violation. Apparently, inmates wearing the vest have limited access to extracurricular programs, including church services. Plaintiff complains that on one unspecified day, he was not allowed to attend church because he had the red/orange vest.

The Fifth Circuit has stated that all prisoners are entitled to a "reasonable opportunity" to exercise religious freedom. Pedraza v. Meyers, 919 F.2d 317, 320 (5th Cir. 1990). However, the fact that an inmate does not attend all of the religious services

3

he wishes and is forced by circumstances to miss an occasional service does not state a valid claim for relief. Green v. McKaskle, 788 F.2d 1116, 1126 (5th Cir. 1986). In O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), prison work regulations resulted in Muslim prisoners being unable to attend Friday evening Jumu'ah services. The Supreme Court held that when a prison regulation impinges on an inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. O'Lone, 482 U.S. at 349. Because the prison regulations in that case were rationally related to the legitimate governmental interests of maintaining order and security and were not so remote as to render the policies arbitrary or irrational, they were upheld against the constitutional challenge. In this case, Plaintiff's inability to attend a religious service on the alleged occasion was not an arbitrary denial. It was a specific consequence of Plaintiff's admitted violation of the non-smoking policy.

To the extent that Plaintiff's complaint could be read liberally as invoking the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, his claim also fails. RLUIPA provides that no state or local government shall impose a substantial burden upon a person residing in or confined to an institution unless the government shows that the burden furthers a compelling governmental interest and does so by the least

4

restrictive means. This standard was carried over from RFRA, but Congress noted that courts entertaining complaints under RLUIPA would accord "due deference to the experience and expertise of prison and jail administrators." Urias v. Hudson, 5:09-cv-130 (ED.Tex.), citing 146 Cong. Rec. S7775 (joint statement of Sen. Hatch and Sen. Kennedy, July 27, 2000).

The Supreme Court has stated that "we do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter v. Wilkinson, 544 U.S. 709 (2005). The Court went on to state that, while the Act adopts a "compelling governmental interest" standard, "context matters" in the application of this standard. The Supreme Court said that lawmakers supporting RLUIPA were "mindful of the urgency of discipline, order, safety, and security in penal institutions," quoting Sen. Hatch, and said that these lawmakers anticipated that courts would apply the Act's standard with "due deference to the expertise and experience of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of cost and limited resources." Id. citing Cutter.

In this case, the burden placed upon the exercise of Plaintiff's religious faith through the temporary denial of attendance at a religious service while being sanctioned for admittedly violating the prison rule is clearly in furtherance of

5

a compelling state interest. Plaintiff could have prayed in another location as opposed to attending the religious service that day.

### 3. Conditions of Confinement

Plaintiff alleges that the officers were going to lock down the prison and turn off the water for three to four days because the officers are "trying to kill" the inmates. [Doc. #7, p.1] First, Plaintiff complains about something that he anticipated happening in the future. Additionally, he does not name a defendant who was, allegedly, going to "cut off" the water. Third, his claim that all officers are trying to kill all inmates is delusional.

Moreover, the documents that Plaintiff filed here presenting this claim are copies of two administrative grievances purportedly submitted to the jail on April 13, 2011 and April 14, 2011. The document is post-marked April 15, 2011, and was filed into the record on April 18, 2011.

Under the Prison Litigation Reform Act, inmates must exhaust "such administrative remedies as are available" prior to bringing a civil action. §1997e(a). Failure to exhaust is an affirmative defense, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). Although district courts may not screen prisoners' complaints for failure to plead exhaustion, they may,

sua sponte, "dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007).

In this case, the pleading makes it clear that Plaintiff did not exhaust this claim. The ARPs are dated April 13 and 14, 2011, and copies were mailed to this Court on April 15, 2011. It would have been impossible for Plaintiff to have properly exhausted his claim prior to filing this claim.

### 4. Medical Care

Plaintiff claims that on one or two occasions, he was told that he could not report to the infirmary to get "nitro tabs" despite the fact that he has a special pass authorizing him to do same. On at least one occasion, after the officer denied his request to go to the infirmary, Plaintiff asked Lt. Heyse for permission, which she granted. [Doc. #3] As for the other incident [Doc. #8], Plaintiff states that he "came up to the bars" and asked Officer Powell if he could go to "medical" to get his nitroglycerin pills because he had run out. The officer refused despite Plaintiff having a "pass" to go to the infirmary.

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. Although the Eighth Amendment does not, by its precise words, mandate a certain level

of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive adequate medical care.[1] "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'"[2]

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component.[3] To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed.[4] The Fifth Circuit has stated that the deliberate indifference standard is an "extremely high" one to meet.[5]

Plaintiff has filed four pleadings in this case, and nowhere in those pleadings does he allege that Officer Powell acted with

---

[1] See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

[2] Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976)).

[3] See Farmer, 511 U.S. at 834.

[4] See id. at 837; Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

[5] Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

deliberate indifference. Even if Officer Powell acted unreasonably, that is insufficient as an allegation of deliberate indifference. Mere negligence or a failure to act reasonably is not enough to establish deliberate indifference; the official must have a subjective intent to cause harm. See Mace v. City of Palestine, 333 F.3d 621, 625 (5th Cir. 2003). Plaintiff does not claim that the Officer subjectively intended to cause Plaintiff harm, nor does Plaintiff allege that he suffered any harm. Also, Plaintiff does not state that he could not get his medication that entire day, week, or month. He could not get his medication at that specific time on that specific date.

Moreover, Plaintiff presents these claims by filing copies of the ARPs that he submitted on March 17, 2011, and May 2, 2011. The documents were mailed to this Court on March 28 and May 3, 2011, respectively. Again, this would have made it impossible for Plaintiff to have properly exhausted his claim.

Finally, Plaintiff seeks only injunctive relief. The complained of incident occurred in March and May; thus, his claim is moot.

## Conclusion

Accordingly, for all of the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's claim be **DENIED and DISMISSED** for failure to state a claim from which relief can be granted under 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 22 day of June, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

10